**MEDIC–9 PARAMEDIC SERVICE, INC., Petitioner,**

v.

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1996.

Decided Oct. 17, 1996.

Kevin K. Kercher, for Petitioner.

Kenneth E. Brody, Assistant Counsel, for Respondent.

Charles I. Artz, for Intervenor, Easton Emergency Squad.

Before COLINS, President Judge, SMITH, J., and KELTON, Senior Judge.

KELTON, Senior Judge.

In this case, we must determine whether the Deputy Secretary of the Department of Health correctly concluded that the proper standards for licensure of advanced life support (ALS) ambulance services were as set forth in Section 12(h) of the Emergency Medical Services Act (EMS Act) and that he was not required to find that, as a condition for licensure, there was a *need* for additional ambulance services.

Section 12(h) of the EMS Act provides:

**(h) Issuance of license.**—The department shall issue a license to an ambulance service pursuant to this act when it is satisfied that the following standards have been met:

(1) The ambulance service is staffed by responsible persons.

(2) The ambulance or other vehicle used to provide emergency medical services is adequately constructed, equipped, maintained and operated to safely and efficiently render the services offered.

(3) The ambulance service meets the required staffing standards set forth in this act.

(4) The ambulance service provides safe and efficient services which are adequate for the emergency medical care, the treatment and comfort and, when appropriate, the transportation of patients.

(5) There is compliance with the rules and regulations promulgated by the department under this act.

Act of July 3, 1985, P.L. 164, *as amended,* 35 P.S. § 6932(h).

The Deputy Secretary addressed this question in the context of determining the correct standard by which Easton Emergency Squad's (EES) application for ALS ambulance service should be processed. For the reasons set forth below, we conclude that the Deputy Secretary's determination was correct.

Here, Medic–9 Paramedic Service, Inc. (Medic–9), a competitor of EES, petitions for review of the lengthy September 27, 1995 order of the Deputy Secretary which provides as follows:

1. That the Department's Division of Emergency Medical Services Systems (Division) provide EES with an application for licensure as an ALS ambulance service, either directly or through the Eastern Pennsylvania Emergency Medical Services Council (Council),[1] so that EES may update its ALS license application with current information;

2. That the Division direct the Council to process that application without requiring that EES demonstrate that it is needed as an ALS ambulance service in the Easton and Glendon area, or any other area, in accordance with the ALS Planning Guide[2] or any other criteria;

3. That, after the Division receives EES's revised license application and the findings and recommendations of the Council, the Division process the application and direct the Council to conduct the vehicle and equipment inspection as the final stage of the licensing process if EES meets all licensure criteria evaluated before that inspection takes place.

4. That, should EES apply for a primary response area designation, the Division direct the Council to evaluate whether EES qualifies for assignment of a primary response area based upon whether EES has sufficient resources and commitment to arrive at any site within that area, within 20 minutes of dispatch for a rural area and 10 minutes of dispatch for an urban area, 24 hours-a-day, 7 days-a-week, and to the volume of calls EES can reasonably be expected to receive in that area, taking into account competition from other ALS ambulance services serving that area in projecting the volume of calls EES would be likely to receive. The Division shall further direct the Council to report its findings and recommendations to the Division for the Division's review and approval or disapproval; and

5. That, should EES become licensed to provide ALS services and be assigned a primary response area, the Division shall not treat the assignment to preclude Medic–9 from providing ALS services in that area or from maintaining or securing a

1. Section 3 of the EMS Act contains the definition of an "Emergency medical services council:"

A nonprofit incorporated entity or appropriate equivalent whose function is to plan, develop, maintain, expand and improve emergency medical services systems within a specific geographical area of this Commonwealth and which is deemed by the department as being representative of the health professions and major private and public and voluntary agencies, organizations and institutions concerned with providing emergency medical services.

35 P.S. § 6923. The purpose of those councils is found in Section 8(a) of the EMS Act:

Emergency medical services councils shall assist the department in carrying out the provisions of this act. Every emergency medical services council shall adhere to policy direction established by the department.

35 P.S. § 6928(a). With regard to Section 12 of the EMS Act's minimum standards for ambulance services, it is the duty of each council to "[a]ssure the reasonable availability of training programs for emergency medical technicians and EMT-paramedics under section 12(f)." 35 P.S. § 6928(c)(5).

2. The "ALS Planning Guide" is short for "Advanced Life Support Planning *A Guide for Pre-Hospital Care Providers and Organizations Considering Paramedic Service for Their Community.*" (Finding of Fact No. 7.) Prior to the Department securing statutory authority to license ambulance services, the Council used the ALS Planning Guide criteria as guidelines to determine whether an entity should be designated by the Council to provide ALS services within a specified area in the Eastern Region. (Finding of Fact No. 8.)

primary response area designation which includes that area.

(Deputy Secretary's September 27, 1995 Order; Appendix A of Medic–9's Brief at 35–36.)

## BACKGROUND

On March 23, 1989, EES filed an application with the Council to be designated to provide ALS services in Easton and Glendon. (Finding of Fact No. 13.) The Council reviewed the March 23, 1989 application to determine if it comported with the criteria in the ALS Planning Guide and on March 28, 1991, its Board of Directors voted to approve the application. (Finding of Fact Nos. 18 and 19.)

On May 20, 1991, the Council wrote to Dr. Ham, Director of the Division, and advised him of the Council's action on EES's application. On July 29, 1991, Dr. Ham sent two letters to the Council. In one, he asserted that the Council's recommendation pertaining to EES was approved and that the Council was authorized to process EES's ALS license application. In the other, he asserted that the Easton area, which had previously been covered by Medic–9, would be served by the EES ALS unit once EES received ALS licensure. (Finding of Fact No. 21.)

Medic–9 filed a petition for review with this Court, No. 1840 C.D.1991, and in a May 11, 1993 memorandum opinion by President Judge Colins, a panel of this Court held that Dr. Ham's two letters constituted an adjudication. Thus, we remanded the matter to the Department with directions to conduct an administrative hearing regarding 1) the es-

tablishment of a new ALS service covering Easton and Glendon; and 2) the allocation of response areas between Medic–9 and any new advanced life support services. (R.R. 1–6a.)

On June 10, 1993, the Department issued an order that Medic–9, EES and the Council show cause as to whether there is a need for a replacement or an additional ambulance service to provide ALS ambulance services to Easton and Glendon and, if there is such a need, how primary response areas between Medic–9 and any new ALS ambulance service should be allocated. (R.R. 7–9a.) The Department conducted hearings on November 14 and 15, 1994 and then issued its September 27, 1995 adjudication and order.

## ISSUES

There are essentially two issues before us for review:[3] 1) whether the Deputy Secretary erred in determining that Section 12(h) of the EMS Act contains the correct criteria for licensure of ALS ambulance services and does not require a determination by him that the EES services are needed; and 2) whether the Deputy Secretary deprived Medic–9 of its due process rights by deciding to afford EES the right to file another ALS ambulance service application with directions to process it pursuant to the Section 12(h) criteria and without input from Medic–9.

## DISCUSSION

### 1. Criteria for Licensure of ALS Ambulance Services

The Deputy Secretary concluded that Section 12(h) of the EMS Act, 35 P.S. § 6932(h),

**3.** Intervenor EES contends that Medic–9 has no standing to bring this appeal. It asserts that the EMS Act provides no right to a licensed ALS ambulance service company to challenge the granting of a competitor's license. Further, Intervenor contends that the Deputy Secretary in his order and adjudication did not grant EES a license; he merely directed various bureaus to process the application and to grant it if the ministerial statutory and regulatory obligations are satisfied. (We note that Intervenor does not argue that the September 27, 1995 order at issue is interlocutory. Therefore, we do not address that herein.)

We conclude that Medic–9 has standing in this case. The Department issued its June 10, 1993 order to show cause as to whether there is a

need for a replacement or an additional ambulance service to provide ALS ambulance services to Easton and Glendon on EES, the Council *and Medic–9.* (R.R. 7a.) Additionally, in our May 11, 1993 memorandum opinion, we remanded the case to the Department with directions, inter alia, to conduct an administrative hearing regarding the allocation of response areas between *Medic–9* and any new ALS services. (R.R. 6a.) Even though "need" is not the correct criterion for licensure of ambulance services, Medic–9 had no way of knowing that the Deputy Secretary would reject what had heretofore been the standard. Therefore, we reject Intervenor's argument that Medic–9 has no standing, but limit our determination to the specific facts of this case.

contains the correct criteria for licensure of ALS ambulance services. (Conclusions of Law Nos. 1 and 2.) He determined that "[n]either need nor compliance with standards in a regional ALS plan is a criterion for licensure of an ambulance service to provide ALS services."[4] He found that a former adjudication by the Secretary using the ALS Planning Guide criteria for applications was inconsistent. *In re: Application of Whitehall–Coplay Ambulance and Rescue Corps.*, Administrative Docket No. E–01–88. In addition, he concluded that this Court's language in *Whitehall–Coplay Ambulance and Rescue Corps. v. Secretary, Department of Health*, 133 Pa.Cmwlth. 473, 575 A.2d 982, 984 (1990), stating that the applicant has the burden "to show that it ... meets the criteria of the state and local plans promulgated pursuant to the act," was dicta as to the "need" issue because the Department's *authority* to consider regional plans in making licensure decisions was not at issue before this Court in *Whitehall–Coplay*. Finally, he determined that licensing of EES would not preclude the objector Medic–9 from securing a primary response designation in the same service area. (Order at paragraph 5.)

Medic–9 argues that the Department has been inconsistent as to what standard is to be applied when considering licensure of ALS ambulance services. It correctly points out that the Department previously endorsed and adopted the position that need and compliance with the regional plan should be considered when reviewing license applications. It contends that the alleged dicta in our *Whitehall–Coplay* case was a holding. It points out that parties have relied on the previously announced standards and that the Department has given no reason for its deviation.

The Department argues that, on June 30, 1989, it erroneously adopted regulations to facilitate implementation of the EMS Act which required an applicant to satisfy need criteria contained in a regional EMS plan. It contends that it properly overruled its prior erroneous interpretation in the adjudi-

cation that is the subject of this petition for appeal and that it was not precluded by the rule of *stare decisis* from doing so. It echoes the Deputy Secretary's statements that our language in *Whitehall–Coplay* regarding the criteria for licensures was dicta and contends that it had a duty to correct itself.

■ As a threshold matter, we agree with the Deputy Secretary that the correct standard for licensure of ALS ambulance services is found in Section 12(h) of the EMS Act and that a prospective licensee does not have to prove as a pre-condition to licensure "need". In the EMS Act, the words "need" or "needs" appear various times. Two places where the word is used more as a term of art, as opposed to ordinary usage, are found in Sections 9(b)(2) and 10(f)(2) of the Act, 35 P.S. §§ 6929(b)(2) and 6930(f)(2). Those two sections encompass the comprehensive emergency medical services statewide development plan and contracts entered into by the Secretary for initiation, maintenance, expansion or improvement of emergency medical services systems. Nowhere in the Act, however, did the General Assembly provide that "need" must be included as a criterion for *licensure* of ALS ambulance services. *Compare* the Health Care Facilities Act,[5] which provides for detailed procedures to review certificates of need. Such certificates (or "CONs") are clearly a requirement for certain *non*-ambulance facilities, services or equipment such as general or special hospitals, rehabilitation or skilled nursing facilities, intermediate care facilities and the like. 35 P.S. §§ 448.103 and 448.701–711.

In contrast, in Section 12(h) of the EMS Act, the General Assembly unambiguously set forth the more limited criteria that must be satisfied before the Department "*shall* issue a license to an ambulance service pursuant to this Act." (Emphasis added). The title of Section 12 is "Minimum standards for ambulance service." The title of subsection 12(h) is "Issuance of license" and it contains only the five criteria, i.e. that:[6]

---

4. (Conclusion of Law No. 3.)

5. Act of July 19, 1979, P.L. 130, 35 P.S. §§ 448.101–448.904b.

6. *See MacElree v. Chester County*, 667 A.2d 1188, 1194 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, —— Pa. ——, 681 A.2d 180 (1996) (holding that, "although a determination as to

(1) The ambulance service is staffed by responsible persons.

(2) The ambulance or other vehicle used to provide emergency medical services is adequately constructed, equipped, maintained and operated to safely and efficiently render the services offered.

(3) The ambulance service meets the required staffing standards set forth in this act.

(4) The ambulance service provides safe and efficient services which are adequate for the emergency medical care, the treatment and comfort and, when appropriate, the transportation of patients.

(5) There is compliance with the rules and regulations promulgated by the department under this act.

35 P.S. § 6932(h).

■ When a statute is unambiguous and free from doubt, we decline to interpret it contrary to its plain words. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *Allegheny County Inst. Dist. v. Department of Public Welfare,* 668 A.2d 252 (Pa.Cmwlth.1995). The fact that the Department previously espoused erroneous criteria for licensure of ALS ambulance services does not mean that it should perpetuate or continue to endorse an incorrect standard.

Secondly, we note that the correctness of the criteria to be used when licensing an ALS ambulance service was not at issue in our previous *Whitehall–Coplay* decision. What was at issue there was whether the Secretary's decision to deny an application to establish an ALS service was supported by substantial evidence and whether the EMS Act was an invalid and unconstitutional delegation of power to the Department. We affirmed the Secretary's decision and noted that the unsuccessful applicant *Whitehall–Coplay* had failed to challenge the Secretary's standards for reviewing the application. 575 A.2d at 984.

■ Accordingly, giving deference to the department charged with being the lead agency for emergency medical services in this Commonwealth,[7] we conclude that the Deputy Secretary did not err in determining that Section 12(h) of the EMS Act contains the proper criteria for licensure of ALS ambulance services.

[T]he construction of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous.

*Spicer v. Department of Public Welfare,* 58 Pa.Cmwlth. 558, 428 A.2d 1008, 1009 (1981) (quoting *Longo Liquor License Case,* 183 Pa. Superior Ct. 504, 508, 132 A.2d 899, 901 (1975)).

Unlike the Health Care Facilities Act, which applies to hospitals and similar entities, under the EMS Act, the General Assembly has chosen *not* to require that an ALS ambulance squad demonstrate need before licensure. Similar treatment is given to physicians, attorneys, barbers, funeral directors, engineers, chiropractors, real estate brokers, hair dressers and accountants. If the General Assembly elects to regulate the quality of ambulance service, but not the number of competitors within a given geographic area, clearly it may do so.

### 2. Due Process

■ Medic–9 argues that the Deputy Secretary erred in determining that the Division and the Council carry out his order without further hearings. It contends that, because this Court in the previous case written by President Judge Colins determined that Medic–9 had property rights which were being affected by the Department's actions,[8] the Deputy Secretary erred in canceling the old process and beginning anew without affording Medic–9 a voice.

The Department argues that the Deputy Secretary did not contravene our Court's prior decision remanding the matter by not conducting a hearing on EES's application

---

legislative intent may not be based solely upon the title and preamble of a statute, courts may consult the title and preamble as part of the statutory construction process.")

**7.** Section 5(b) of the EMS Act, 35 P.S. § 6925(b).

**8.** (R.R. 1–6a.)

and inviting Medic–9 to such a hearing. It points out that EES's application was not before our Court and that what was before our Court were two letters which purported to substitute EES for Medic–9 as a sole provider of ALS services to Easton and Glendon. There, Medic–9's property rights were being affected without due process of law. The Department alleges that here neither Medic–9's license nor rights have been diminished by the Deputy Secretary's adjudication that is the subject of the current petition for review. We agree. Paragraph 5 of the Deputy Secretary's September 17, 1995 Order so provides.

### CONCLUSION

Accordingly, we affirm the Deputy Secretary of Health's September 27, 1995 order.

### *ORDER*

AND NOW, this 17th day of October, 1996, the order of the Department of Health dated September 27, 1995 is hereby affirmed.